<u>FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

—————————————————————
                                  :
D.L. and K.L., o/b/o J.L.,      :
                                  :
        Plaintiffs,      :
                                  :         Civil Action No. 05-5129 (JAG)
              v.            :
                                  :           **OPINION**
SPRINGFIELD BOARD OF     :
EDUCATION,                :
                                  :
        Defendant.      :
—————————————————————:

<u>APPEARANCES:</u>

Gary S. Mayerson, Esq.
Mayerson & Associates
330 West 38th Street
Suite 600
New York, NY 10018
For Plaintiffs D.L. and K.L., on behalf of J.L.

Thomas O. Johnston, Esq.
Porzio, Bromberg & Newman, P.C.
100 Southgate Parkway
P.O. Box 1997
Morristown, NJ 07962
For Defendant Springfield Board of Education

<u>GREENAWAY, JR., U.S.D.J.</u>

       This matter comes before this Court on cross-motions for summary judgment, pursuant to

FED. R. CIV. P. 56, of Plaintiffs D.L. and K.L., on behalf of their son J.L. (collectively

"Plaintiffs"), and Defendant Springfield Board of Education ("Springfield" or "Defendant").[1]

For the reasons set forth below, Plaintiffs' motion is granted, and Defendant's motion is denied.

# I. <u>BACKGROUND</u>

**A.     Facts**

This Individuals with Disabilities Education Act ("IDEA") case arises from the school

placement of Plaintiff J.L., a minor, for the 2004-2005 academic year, and the 2005 extended

academic year.  Plaintiffs D.L. and K.L. brought this case on behalf of their son, J.L., arguing that

the Individualized Education Program ("IEP") developed for J.L. by Springfield failed to provide

a free appropriate public education ("FAPE").  D.L. and K.L. allege that the IEP was inadequate

for a number of reasons, including that Springfield's proposed placement was not the least

restrictive environment for J.L., and that the applied behavior analysis ("ABA") services were

not commensurate with that which J.L. had been receiving.[2]   As a result of their disagreement

---

[1] Although Plaintiffs move for summary judgment, their motion is essentially an appeal of the decision, by Administrative Law Judge Stephen G. Weiss ("ALJ Weiss"), to dismiss Plaintiffs' claim for reimbursement, and to deny a due process hearing on the merits.  <u>M.A. v. Voorhees Twp. Bd. of Educ.</u>, 202 F. Supp. 2d 345, 359 (D.N.J. 2002) (quoting <u>Heather S. v. State of Wisconsin</u>, 125 F.3d 1045, 1052 (7th Cir. 1997) (internal citation omitted) ("When there is no new evidence presented to the district court, as in this case, 'the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.'")).

[2] J.L. was diagnosed with Autism Spectrum Disorder in July 2004, at age two.  Prior to his third birthday, when he would have become eligible to receive special education and related services from Springfield, J.L. was enrolled in the New Jersey Early Intervention System, and received a variety of services under an Individualized Family Service Plan ("IFSP").  J.L. attended the Neighborhood House Nursery School, a preschool designed for non-disabled children, and received ABA services, speech and language therapy, and occupational therapy as a part of his IFSP.  In September 2004, J.L.'s parents contacted Springfield and requested an evaluation by the district's child study team ("CST").  In December 2004, the CST determined that J.L. was eligible for special education and related services.  At this time, Springfield offered J.L. an IEP for the remainder of the 2004-2005 academic year with placement in a preschool

with the IEP, D.L. and K.L. agreed to accept occupational therapy and speech services on a
"without prejudice" basis, and rejected the remainder of the IEP.  Plaintiffs also provided written
notice to Springfield of their intent to seek reimbursement for other expenses relating to J.L.'s
education.

On May 3, 2005, after a series of correspondence with Springfield, D.L. and K.L.
requested a due process hearing to resolve their dispute with Defendant.  Plaintiffs also sought
reimbursement for the engagement of ABA services during the 2004-2005 school year, and for
the summer of 2005.  On July 13, 2005, Defendant filed a Notice of Motion for Summary
Decision to dismiss Plaintiffs' claims for reimbursement.  ALJ Weiss granted Springfield's
motion on September 16, 2005, and dismissed Plaintiffs' case without a hearing.  On October 26,
2005 Plaintiffs appealed the dismissal to this Court.  At the time Plaintiffs' motion for summary
judgment and Defendant's cross-motion for summary judgment were filed, J.L. had not received
any special education or related services from Springfield.

**B.     Individuals With Disabilities Education Act**

Congress enacted the IDEA

> to ensure that all children with disabilities have available to them a free appropriate
> public education that emphasizes special education and related services designed to
> meet their unique needs and prepare them for further education, employment, and
> independent living[, and] . . . to ensure that the rights of children with disabilities and
> parents of such children are protected . . . .

20 U.S.C. §§ 1400(d)(1)(A) and (B) (2008).  Pursuant to the IDEA, each local educational
agency must have in effect, at the beginning of each school year, an IEP for each student

---

disabled class within the district.  Although the IEP also included ABA services, speech and
language training, and occupational therapy, these services were offered at different times and
levels than J.L. had previously received.

designated as eligible for special education.  20 U.S.C. § 1414(d)(2)(A) (2008).

An IEP is developed by a team consisting of the child's parents, at least one of the child's special education teachers, a curriculum specialist, and, if requested, a person with special knowledge or expertise related to the child's education.  20 U.S.C. § 1414(d)(1)(B).  The team must meet no less than annually to determine whether the goals set for the child are being achieved.  20 U.S.C. § 1414(d)(4).  In the instant case, the CST and J.L.'s parents make up this team.

A parent may reject an IEP if he or she feels that it does not provide their child with a FAPE.  20 U.S.C. § 1415(b)(6) (2008).  A parent may then request a due process hearing or a mediation conference to address their rejection of the IEP.  20 U.S.C. §§ 1415(e) and (f).

## II.  STANDARD OF REVIEW

"Any party aggrieved by a placement decision may bring suit in a state court of competent jurisdiction or a federal district court."  Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 198 (3d Cir. 2004); see also 20 U.S.C. § 1415(i)(2).  A district court's review in IDEA cases "'differs substantially from judicial review of other agency actions, in which the courts generally are confined to the administrative record and are held to a highly deferential standard of review.'"  Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 757 (3d Cir. 1995) (quoting Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1993)).

In Board of Education of the Hendrick Hudson Central School District, Westchester County v. Rowley, 458 U.S. 176 (1982), the Supreme Court of the United States sets forth the unique standard of review for federal district courts to use when reviewing the decisions of an Administrative Law Judge ("ALJ") in an IDEA case.  The Supreme Court states that "[t]he fact

4

that § 1415(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings." Id. at 206 (citing 20 U.S.C. § 1415(e)).  The Third Circuit has interpreted the "due weight" standard as requiring a district court to apply a "modified de novo" review of the administrative proceedings.  S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 270 (3d Cir. 2003).

In applying a modified de novo review, "'a district court is required to make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings.'"  Id. (quoting Knable v. Bexley City Sch. Dist., 238 F.3d 755, 764 (6th Cir. 2001)).  However, an administrative decision concerning a question of law is not entitled to such deference.  Carmel Cent. Sch. Dist. v. V.P., 373 F. Supp. 2d 402, 408 (S.D.N.Y. 2005) ("Therefore, to the extent that the [school d]istrict argues that, as a matter of statutory construction, the [parents] are not entitled to tuition reimbursement, this Court would not need to defer in any respect to the prior administrative determinations.").

## III. DISCUSSION

There is little, if any, factual dispute in this matter.[3]  The parties essentially agree that J.L.

---

[3] In compliance with L. Cɪv. R. 56.1, Defendant included a "Statement of Undisputed Material Facts" in its cross-motion for summary judgment.  Plaintiffs did not include such a statement.  As a result of Plaintiffs' failure, Defendant urges this Court to deny Plaintiffs' motion for summary judgment.  (See Def.'s Br. in Supp. of Cross-Mot. for Summ. J. 17.)

This Court is not inclined to impose such a harsh sanction.  See Scott v. Bd. of Educ. of the City of E. Orange, No. 01-4171, 2006 U.S. Dist. LEXIS 93723, at *3-5 (D.N.J. Dec. 12, 2006) (adjudicating motions for summary judgment despite the plaintiff's failure to submit a statement of uncontested material facts in compliance with L. Cɪv. R. 56.1, and deeming

did not receive special education or related services from Springfield.  Therefore, the question before this Court is whether Plaintiffs, as a matter of law, are barred from seeking reimbursement from Defendant because they did not first "try out" an IEP they found to be inadequate to meet their son's educational needs.  This Court finds that Plaintiffs are not prevented from seeking reimbursement.

Section 1412(a)(10)(C) of the IDEA provides that

[i]f the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

20 U.S.C. § 1412(a)(10)(C)(ii) (2008) (emphasis added).  Similarly, the related section of the New Jersey Administrative Code states that

[i]f the parents of a student with a disability, who previously received special education and related services from the district of residence, enroll the student in a nonpublic school . . . without the consent of or referral by the district board of education, an administrative law judge may require the district to reimburse the parents for the cost of that enrollment if the administrative law judge finds that the district had not made a free, appropriate public education available to that student in a timely manner prior to that enrollment and that the private placement is appropriate.

N.J. ADMIN. CODE § 6A:14-2.10(b) (2008) (emphasis added).  Based on the language of these two pieces of legislation, Defendant argued, before ALJ Weiss, that because Plaintiffs had not

_____

uncontested facts as admitted).  The essence of the matter before this Court is legal.  Plaintiffs appear to have no quarrel with the facts set forth in Defendant's submission.  Thus, this Court will deem Defendant's uncontested facts as admitted, unless disputed by Plaintiffs in their briefs.  See Longoria v. New Jersey, 168 F. Supp. 2d 308, 312  n.1 (D.N.J. 2001) ("treat[ing] facts appearing in the Defendant's Rule 56.1 statement as admitted by [the plaintiff], unless disputed by [the plaintiff] in his briefs or contradicted by the evidence.").

6

received special education or related services from Springfield, "the Office of Administrative Law[] lacked jurisdiction [] to consider [Plaintiffs'] reimbursement claim." (Op. of Administrative Law Judge Stephen G. Weiss 6, September 16, 2005.) Plaintiffs, on the other hand, claimed that "there [was] no requirement that special education and related services [had] to have been received from the local school district" and that "the proposed IEP was attempting to impose an even more restrictive placement on their son than he was receiving." (Id. at 7.) Therefore, Plaintiffs argued that they were not required to first accept the IEP in order to remain eligible for reimbursement. (Id.)

ALJ Weiss, relying on an administrative decision by ALJ Joseph F. Martone, agreed with Springfield and held that Plaintiffs were required to have received special education and related services from Defendant prior to seeking reimbursement. (Id. at 8-11.) ALJ Weiss focused on two cases cited in ALJ Martone's decision.

In Greenland School District v. Amy N., 358 F.3d 150, 152 (1st Cir. 2004), the plaintiffs, parents of a school-aged daughter named Katie, sought reimbursement for private school tuition during Katie's fifth and sixth grade academic years. Katie began attending Greenland Central School ("Greenland"), a public school, in the first grade. Id. During the first grade, Katie's teacher noticed that Katie "had difficulty focusing on classroom activities and was easily distracted." Id. Because of this, Katie's parents took her to a private psychologist who diagnosed Katie with Attention Deficit Hyperactivity Disorder ("ADHD"). Id. Despite Katie's diagnosis, Katie's parents continued her enrollment at Greenland through the fourth grade, and did not request that Katie be evaluated for special education services. Id. at 153.

When Katie completed the fourth grade, her parents withdrew her from Greenland, and

enrolled her in Mont Blanc Academy, a private school. Katie had trouble at Mont Blanc, and her parents removed her, mid-year, and enrolled her at the Learning Skills Academy ("LSA"), a private school with a majority of students suffering from a learning disability or ADHD. Id. For the first time, Katie's parents contacted Greenland and requested that Katie be evaluated for special education services. Id. at 154. Greenland concluded that "even though Katie had ADHD and an anxiety disorder, those conditions did not adversely affect her educational performance" and therefore, found Katie ineligible for special education services. Id.

Katie's parents disagreed with the decision and scheduled Katie for an evaluation with an independent psychiatrist. Id. The psychiatrist "confirmed Katie's diagnosis of ADHD, [and] also concluded that Katie suffer[ed] from Asperger's disorder[,] . . . a developmental disability on the autism spectrum . . . ." The school district then reversed its finding that Katie was not eligible for special education services, and began to design an IEP for Katie. Id. at 154-55. While the IEP was being developed, Katie's parents re-enrolled her at the LSA. Id. at 155. Katie remained enrolled at the LSA even after the IEP was complete, and her parents sought reimbursement for tuition. Id.

The First Circuit affirmed the district court's decision that Katie's parents were not eligible for reimbursement. The court reasoned that, at a minimum, Katie's parents "had to inform the school district of their concerns about their child's special needs and about the plan proposed before removing the child from public school." Id. at 159. "This serves the important purpose of giving the school system an opportunity, before the child is removed, to assemble a team, evaluate the child, devise an appropriate plan, and determine whether a free appropriate public education can be provided in the public schools." Id. at 160.

8

The First Circuit's decision turns on the fact that Katie's parents did not provide Greenland with any notice, while Katie attended that school, of a need for special education services.  Therefore, <u>Amy N.</u> is easily distinguishable from the present case.  Here, and unlike the facts in <u>Amy N.</u>, it is undisputed that Plaintiffs reached out to Defendant as soon as J.L. became eligible, at age three, for special education services with Springfield.  Plaintiffs had J.L. evaluated, participated in the development of an IEP, and when the IEP was finalized, provided Defendant with written notice of their rejection of the IEP as inadequate for J.L.'s needs, and their intent to seek additional special education services for J.L.  Similarly, Plaintiffs provided Defendant with written notice of their intent to seek reimbursement for such services after ten days from the notice.  The parents in <u>Amy N.</u> failed to do any of these things.

However, despite the differences in the facts of the case <u>sub judice</u> and <u>Amy N.</u>, ALJ Weiss found the decision persuasive.  ALJ Weiss concentrated on dicta stating that "tuition reimbursement is only available for children who have previously received 'special education and related services' while in the public school system . . . . " <u>Id.</u> at 159.  However, ALJ Weiss failed to acknowledge the First Circuit's explicit consideration of facts similar to those before this Court.  The First Circuit stated that while, in general, tuition reimbursement is available only for parents whose children had previously received special education services, reimbursement is potentially available for "those who at least timely requested such services while the child is in public school[]." <u>Id.</u> at 160.

In addition, the First Circuit explained this reasoning in a footnote, stating that "[d]espite the language of the statute, some legislative history suggests that Congress meant to include children who had requested but not yet received special needs services during their period in the

public schools." <u>Id.</u> at 160 n.7.  This is precisely the situation here.  D.L and K.L. requested that J.L. receive special education services at Springfield, once J.L. reached the age of eligibility. They made this request while J.L. attended the Neighborhood House Nursery School.  Although J.L.'s parents requested such services before J.L. could attend a school within the district, they informed Springfield of J.L.'s special needs and requested an evaluation at the earliest possible opportunity.  They should not be penalized because J.L. was not technically enrolled in a district school, and he had not yet received any services from Springfield.

ALJ Weiss next cites to <u>Board of Education of the City School District of the City of New York v. Tom F.</u>, No. 01-6845, 2005 U.S. Dist. LEXIS 49 (S.D.N.Y. Jan. 4, 2005).  In <u>Tom F.</u>, Judge George B. Daniels of the Southern District of New York reversed the decision of the State Education Department State Review Officer that awarded tuition reimbursement to the parents of Gilbert F.  Gilbert F. attended Stephen Gaynor School ("Gaynor"), a private school, since kindergarten.  <u>Id.</u> at *1.  In June 1999, as a part of the Committee on Special Education's[4] ("CSE") annual review, Gilbert F.'s placement and IEP were reviewed.  <u>Id.</u> at *1-2.  The CSE recommended that Gilbert F. "continue to be classified as learning disabled and that he be placed in a Modified Instructional Services . . . program with a teacher ratio of 15:1."  <u>Id.</u> at *2.  The CSE also recommended that Gilbert F. receive a variety of additional services, and that the recommended program and services be provided at a public school.  <u>Id.</u>

Despite the modifications of the IEP, Gilbert F.'s father "continued [his] placement at Gaynor for the 1999-2000 school year and requested an impartial hearing to seek reimbursement

_____

[4] The Board of Education's Committee on Special Education is a subunit of the City School District of the City of New York.

for the cost of [Gilbert F.'s] tuition." Id.  Gilbert F.'s father was awarded tuition reimbursement as a result of the hearing.  The Board of Education appealed the decision, arguing that Gilbert F.'s father was "barred from tuition reimbursement under the IDEA because his child did not previously receive special education under the authority of a public agency." Id. at *5-6.

Judge Daniels reversed the administrative decision to award Gilbert F.'s father tuition reimbursement.  The court reasoned that "the plain language [of the IDEA] is that where a child has *not* previously received special education from a public agency, there is no authority to reimburse the tuition expenses arising from a parent's unilateral placement of the child in private school." Id. at *7 (emphasis in original).

Although this case is arguably persuasive, the ruling was vacated by the Second Circuit Court of Appeals.  See generally, Bd. of Educ. of the City Sch. Dist. of the City of N.Y. v. Tom F., 193 Fed. App'x 26 (2d Cir. 2006).  The Second Circuit remanded the case for entry of an order consistent with its recent decision, Frank G. v. Board of Education of Hyde Park, Central School District, 459 F.3d 356 (2d Cir. 2006).

In Frank G., the Second Circuit considered facts similar to those in both Tom F. and Amy N., but disagreed with the findings of those courts.  The Second Circuit found the language of 20 U.S.C. § 1412(a)(10)(C)(ii) ambiguous, and ultimately decided that such language did not preclude the parents from seeking tuition reimbursement.  459 F.3d at 370.  In fact, the court affirmed the district court's order awarding the parents tuition reimbursement and attorney's fees. Id. at 376.

The material facts of Frank G. mirror those before this Court.  Anthony, a child diagnosed with ADHD at age three, attended private school since kindergarten.  459 F.3d at 359-60.  He

remained in private school through the fourth grade.  While attending private school, Anthony's

parents requested an evaluation by the CSE, which then classified Anthony as learning disabled.

Id. at 360.  Anthony's parents also had him evaluated by an independent neuropsychologist.  Id.

In addition to the recommendations of the CSE, the neuropsychologist recommended that

Anthony's current class size was too large for his needs, and that his parents should consider

placing him in a smaller class, with no more than 12 students.  Id.

After the CSE completed its evaluation, it developed an IEP for Anthony which

"recommended placement in a regular education class of 26 to 30 students" at a public school

within the district.  Id.  Anthony's parents then "requested an impartial hearing to reconsider the

CSE's recommendation that Anthony receive special education services at the [public school]"

because the class sizes were considerably larger than those at the private school, and those

recommended by the neuropsychologist.  Id. at 360-61.

The Board of Education eventually conceded that its recommendation was not

appropriate for Anthony, but retained its position that it should not be required to reimburse

Anthony's parents for tuition because the private school placement was also inappropriate.  Id. at

361.  The State Review Officer denied Anthony's parents tuition reimbursement, and they

appealed.  Id. at 361-62.

Judge Charles L. Brieant of the Southern District of New York reversed, and awarded

Anthony's parents tuition reimbursement, based on a finding that the private school placement

was appropriate.  Id. at 362.  The school district appealed, and argued that "it ha[d] an 'absolute

legal defense' to Anthony's parents' claim for reimbursement," even if the private school

placement was found to be appropriate.  Id. at 367.  It claimed, like Defendant asserts in this

case, that "[o]nly after a learning disabled student enrolled in an inappropriate special education program offered by a public agency would his parents be free unilaterally to enroll him at an appropriate private school and seek reimbursement." Id.  Therefore, because Anthony had not received such services from the school district, it argued that Anthony's parents were not entitled to reimbursement.  Id.

In interpreting the language of 20 U.S.C. § 1412(a)(10)(C)(ii), the Second Circuit stated that "[t]he plain language of 20 U.S.C. § 1412(a)(10)(C)(ii) does not say that tuition reimbursement is only available to parents whose child had previously received special education and related services from a public agency, nor does it say that tuition reimbursement is not available to parents whose child had not previously received special education and related services." Id. at 368.  The court reasoned that when considering the purpose of the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education," 20 U.S.C. § 1400(d)(1)(A), "it is hardly clear from the fact that § 1412(a)(10)(C)(ii) provides for parental reimbursement in one circumstance, that it excludes reimbursement in other circumstances." Id. at 370.

The court went on to note that "[a]nother section of the IDEA, 20 U.S.C. § 1415(i)(2)(C), authorizes a district court hearing a challenge to the failure of a local education agency to provide a free appropriate public education to 'grant such relief as [it] determines is appropriate.'" 459 F.3d at 369.  Therefore, after a lengthy discussion of the canons of statutory interpretation and legislative history of the IDEA, the Second Circuit concluded that "[a]ll that is required of parents who have received an IEP for their child is that they provide the appropriate public agency with reasonable notice that they plan to 'reject [] the placement proposed by the public

agency to provide a free appropriate public education to their child, including stating their

concerns and their intent to enroll their child in a private school at public expense.'" Id. at 372

(quoting 20 U.S.C. §§ 1412(a)(10)(C)(iii)(I)(aa)-(bb)).  The court reasoned that any other

interpretation

> would . . . prevent children who are provided with inadequate IEPs from receiving
> a free appropriate public education if their disabilities were detected before they
> reached school age.  It would also place parents of children with disabilities in the
> untenable position of acquiescing to an inappropriate placement in order to preserve
> their right to seek reimbursement from the public agency that devised the
> inappropriate placement. Such a result, it has been suggested, 'ensures that a parent's
> rejection of a public school placement is not based on mere speculation as to whether
> the recommended school placement would have been appropriate.' This suggestion
> turns on the erroneous assumption that parents would have to keep their child in a
> public school placement until it was clear that their 'speculation' was borne out by
> a wasted year of actual failure.  Such a 'first bite' at failure is not required by the
> IDEA.

Id. (internal citation omitted).

This Court agrees with the Second Circuit.  It is an unreasonable interpretation of

§ 1412(a)(10)(C)(ii), especially in light of the overall mission of the IDEA, to read it so narrowly

as "to require parents to jeopardize their child's health and education . . . in order to qualify for

the right to seek tuition reimbursement."  Id.  However, that is precisely what Springfield would

have this Court mandate if it agreed with Springfield's position.

The crux of Plaintiffs' position is that Springfield's proposed IEP was inadequate to meet

J.L.'s individual needs.  Specifically, Plaintiffs had a legitimate concern that placing J.L. in a pre-

school disabled class would negate the progress that he had made attending a mainstream

preschool class.  This concern is the same as that expressed by the parents in Frank G., which the

Second Circuit validated.  Therefore, and just as the Second Circuit articulated, this Court

14

declines to require D.L. and K.L. to have "engage[d] in such a useless and potentially counterproductive exercise" of placing J.L. in the preschool disabled class, until it became clear that such placement was inadequate, in order to remain eligible for seeking reimbursement.  Id. This Court finds that Plaintiffs are not statutorily precluded from having a hearing to determine the appropriateness of Defendant's proposed IEP, and to seek reimbursement for expenses related to J.L.'s special education services.

## IV.  CONCLUSION

For the reasons stated above, this Court grants Plaintiffs' motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and denies Defendant's motion for summary judgment.  The case is remanded for a due process hearing to determine whether Defendant's proposed placement would have provided J.L. with a free appropriate public education.


Date: March 6, 2008

            S/Joseph A. Greenaway, Jr.
           JOSEPH A. GREENAWAY, JR., U.S.D.J.